JAMES M. STEEL and THERESA B. STEEL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Steel v. Commissioner
Docket Nos. 20507-86; 8108-87
United States Tax Court
T.C. Memo 1988-399; 1988 Tax Ct. Memo LEXIS 427; 55 T.C.M. (CCH) 1721; T.C.M. (RIA) 88399; August 25, 1988
Arlene A. Blume, for the *428 respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined income tax deficiencies against petitioners for 1982 and 1983 in the amounts of $ 11,670.32 and $ 14,441.28, respectively. The issue is whether petitioner-husband is a "qualified individual" eligible to exclude foreign earned income from his gross income under section 911(a). [1] The facts have been fully stipulated and are incorporated herein by this reference. Petitioners resided in Louisiana at the time their petitions herein were filed. During the years at issue, the husband (sometimes hereinafter referred to as petitioner) worked for Penrod Drilling Company (hereinafter Penrod) as a mechanic on one of two offshore oil rigs. Throughout 1982 and until July 30, 1983, petitioner was assigned to a rig near Macae, Brazil. In 1983 that rig was relocated to the Gulf of Mexico off the coast of the United States. Between July 30, 1983 and September 22, 1983, petitioner accompanied the rig on its journey from the waters of Brazil to the Gulf of Mexico. On October 20, 1983 Penrod *429 assigned petitioner to an oil rig in the Philippines and he spent the rest of 1983 working in the Philippines on that rig. For working overseas, petitioner received a 25 per cent bonus over the wages he would have earned on a site in the continental United States. Generally during the years at issue, petitioner had a schedule which required him to work on the oil rig for 28 days at a time, alternating with 28-day periods of rest. Exceptions to the 28 day alternating schedule occurred on two occasions in 1983: first, between July 30, 1983, and September 22, 1983, when petitioner accompanied his rig from Brazil to the Gulf of Mexico and, second, from October 20, 1983, until the end of 1983, which he spent on the rig in the Philippines without any trips back to the United States. In 1982 and 1983 petitioner spent 188 and 228 days, respectively, outside the United States pursuant to his employment with Penrod. He spent his rest periods at home in Louisiana, with the travel both home and back to the rig occurring during the rest period. Penrod made the transportation arrangements and paid the cost of transporting petitioner between his home and the drilling site. During 1982 and *430 1983, petitioners owned a home in Louisiana. Moreover, petitioner's wife and three children resided in that home throughout those years. Petitioner's wife was employed as a nurse in the town of their residence, earning $ 12,565.52 and $ 10,923.20 in 1982 and 1983, respectively. Petitioner owned a car in the United States which was registered in Louisiana; he maintained a Louisiana driver's license; he was registered to vote in Louisiana; and he maintained bank accounts in Louisiana. During work periods, petitioner's employer provided him with living quarters and food on the rig. While assigned in Brazil, petitioner would leave his clothing and other personal belongings on the rig during his 28-day periods off. He generally spent the entire work period on the rig to which he was assigned, although while he was on the rig in the waters of Brazil, petitioner occasionally visited friends in that country. On both the rig in Brazil and that in the Philippines, petitioner worked with other Americans, citizens of the country in the waters of which the rig was located, and citizens of other countries. Petitioner did not maintain a house or apartment in Brazil. Moreover, he did not *431 have a bank account in that country and was not licensed to drive there. Further, his wife and children did not visit him in Brazil. While he was in Brazil, petitioner sought, but did not obtain, employment as a mechanic with Brazilian based companies. The record does not show what contacts, if any, petitioner had outside the rig while he was assigned in the Philippines. Petitioner was a citizen of the United States, permitted to work in Brazil under a resident visa issued by that country and permitted to work in the Philippines on a temporary visa. He did not pay taxes either to Brazil or to the Philippines as a result of his employment on the drilling rigs. In 1982 and 1983 petitioner and his wife reported on their income tax returns earning from Penrod and deductions or "exclusions" of foreign earned income in the following amounts: Year
Earnings
Exclusion
1982
$ 43,782.45
$ 39,000.00
1983
48,578.42
48,577.72
In separate notices of deficiency for 1982 and 1983, the Commissioner disallowed the foreign earned income exclusion taken on petitioners' returns on the ground that petitioner had not established that he was a "bona fide resident" of a *432 foreign country or that he was "physically present" in a foreign country for at least 330 full days during any twelve month period under section 911(d)(1)(A) or (d)(1)(B), respectively. Petitioner has stipulated that he was not present in any foreign country or countries for 330 days out of any twelve month period encompassing any portion of the 1982 or 1983 tax year. Although petitioner here spent longer periods abroad than did the petitioners in Miller v. Commissioner,T.C. Memo. 1988-397, and Whitesell v. Commissioner,T.C. Memo. 1988-398, both decided this day, and, in addition, sought employment in Brazil, he nonetheless did not, under the standards outlined in Miller, and applied in Whitesell, establish a tax home abroad. Instead, petitioner's contacts with the United States dictate the conclusion that his abode remained in the United States during 1982 and 1983 and, consequently, that he did not have a tax home abroad in those years. As a result, he does not satisfy the "tax home" requirement contained in section 911(d)(1) and cannot be classified as a "qualified individual" under either the "bona fide resident" test of section *433 911(d)(1)(A) or the "physical presence" test of section 911(d)(1)(B). He is thus ineligible for the exclusion for "foreign earned income" of section 911(a). Decision will be entered for the respondent.
Footnotes
1. Other adjustments in the notice of deficiency result automatically from resolution of this issue. ↩